## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF ARKANSAS

| | |
|---|---|
| GROTTO, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 3:25-cv-03003-TLB |
| v. | ) |
| | ) |
| ATLANTIC CASUALTY INSURANCE | ) |
| COMPANY, | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT ATLANTIC CASUALTY INSURANCE COMPANY'S
BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Respectfully submitted,

Jeremy K. Ward, Ark. Bar No. 2012014
FRANDEN, FARRIS, QUILLIN,
 GOODNIGHT, ROBERTS + WARD
Two West Second St., Suite 900
Tulsa, OK  74103
918/583-7129
FAX 918/584-3814
jward@tulsalawyer.com
***Attorney for Defendant***
***Atlantic Casualty Insurance Company***

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................ 1

II. STATEMENT OF UNDISPUTED MATERIAL FACTS ..................................................... 3

III. ARGUMENTS AND AUTHORITIES................................................................................... 3

   A. Summary Judgment Standard ............................................................................................ 3

   B. ACIC is Entitled to Summary Judgment on Plaintiff's Claims as there was no Breach of Contract............................................................................................................................. 4

     i. There Was no Active Business Interruption Coverage to Cover the Lost Sales, Wages, or Other Costs Incurred due to the Restaurant's Closure......................................................... 4

     ii. Plaintiff's Spoilage Claim was not Covered...................................................................... 5

     iii. The Damages to Stone Masonry and Rockwall Pre-existed the Loss ............................... 6

     iv. The Damages to the Tiling Pre-existed the Loss ............................................................... 7

     v. The Estimates for the Furniture and Water Remediation were Proper.............................. 8

IV. CONCLUSION....................................................................................................................... 9

# **TABLE OF AUTHORITIES**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242, 248 (1986)............................................................................................ 3

*Aon Risk Servs. v. Meadors*,
    100 Ark. App. 272, 285, 267 S.W.3d 603, 612 (2007)......................................................... 4

*Enter. Bank v. Magna Bank*,
    92 F.3d 743, 747 (8th Cir. 1996) ....................................................................................... 3

*George v. Great Lakes Reinsurance*,
    2015 Ark,App. 36 at 6, 454 S.W.3d 243, 246...................................................................... 4

*Harasyn v. St. Paul Guardian Ins. Co.*,
    349 Ark. 9, 18, 75 S.W.3d 696, 701 (2002)........................................................................ 4

*Krenik v. Cnty. of LeSueur*,
    47 F.3d 953 (8th Cir. 1995) ............................................................................................. 3

*S. Farm Bureau Cas. Ins. Co. v. Fields*,
    262 Ark. 144, 146, 553 S.W.2d 278, 279 (1977)................................................................ 4

**Rules**

Fed. R. Civ. P. 56(a) ............................................................................................................ 3

Defendant Atlantic Casualty Insurance Company ("ACIC"), pursuant to Rule 56(a) of the Federal Rules of Civil Procedure and Local Rule 56.1, files its Brief in Support of Motion for Summary Judgment against all claims brought by Plaintiff, and respectfully shows the Court as follows:

**I.   INTRODUCTION**

This claim arises from a water damage claim to Plaintiff's restaurant, the Grotto (hereinafter "the Grotto" or "the Restaurant"). Plaintiff alleges that its pipes had frozen on January 14, 2024, and after thawing on or about January 17, 2024, leaked and damaged the Restaurant. ACIC retained Independent Adjuster John Hart ("IA Hart") to investigate the claim. IA Hart gathered information from Plaintiff and its owner and conducted several inspections of Plaintiff's restaurant. IA Hart ultimately prepared an estimate on October 16, 2024, finding only covered damages to portions of Plaintiff's furniture and for water remediation costs. During the investigation of the claim, Plaintiff submitted a Total Estimate of Losses to ACIC, claiming coverage and costs for lost sales and payroll, furniture replacement, stone masonry repairs, tiling repairs, and food spoilage.

Based on Plaintiff's Policy and the inspections conducted by IA Hart and Engineer Quentin Ragan ("Engineer"), ACIC found that there was no coverage for most of the costs in the estimate submitted by Plaintiff. First, Plaintiff's Policy in effect on the date of loss did *not* have business interruption coverage for any lost sales or payroll when the Restaurant was closed. Plaintiff's owners, during their deposition, confirmed that they requested and obtained business interruption coverage for the policy period *after* the loss. As to the food spoilage, the cost of the items that Plaintiff claims spoiled did not exceed the Policy's $5,000.00 deductible and was also not covered under the Policy language.

Plaintiff also alleges that tiling and stonewalls in the Restaurant were damaged on the date of loss. IA Hart conducted several inspections of Plaintiff's restaurant during the claim handling. He first inspected Plaintiff's restaurant on January 30, 2024, but did not identify any water damage to either the masonry or tiling. Plaintiff then obtained and submitted repair estimates from Stacy's Historic Stoneworks for the stone masonry repairs, and Gemini Solutions, LLC ("Gemini Solution"). Anthony Corbin of Gemini Solutions claimed to have found loose tiling that he believed may have been caused by water damage but could not identify any loose tiles to IA Hart when he was present for the second inspection on April 23, 2024. Although IA Hart was still unable to find water damage to the stone masonry or tiling, ACIC retained Engineer Ragan, who conducted an engineering inspection on June 7, 2024. Engineer Ragan also found no evidence of water leakage damage, and any damage or looseness was the result of age-related deterioration.

ACIC did find covered damages to Plaintiff's furniture and for water remediation costs, but the parties dispute the amounts of these costs. Plaintiff claims $12,430.33 in furniture damages and provided online listings in support. IA Hart only found certain parts of the Plaintiff's furniture to be damaged and estimated the Replacement Cost Value of the furniture to be $4,097.83. Based on the hours Plaintiff's owners claimed it took to extract and clean the water, ACIC determined the Replacement Cost Value of the water remediation costs to be $5,051.60. After accounting for furniture replacement and water remediation costs, ACIC determined that the Replacement Cost Value for covered damages was only $9,149.43. After applying the $5,000.00 and subtracting depreciation costs, ACIC issued a $2,305.41 check to Plaintiff. As shown by the claim investigation, ACIC reasonably determined that only coverage

was available for furniture damage and water remediation costs and complied with the terms of the insurance contract.

## II.   STATEMENT OF UNDISPUTED MATERIAL FACTS

ACIC incorporates fully herein its Statement of Undisputed Material Facts as to which There are No Material Issues for Trial, which is filed herewith.

## III.   ARGUMENTS AND AUTHORITIES

### A. *Summary Judgment Standard*

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Krenik v. Cnty. of LeSueur*, 47 F.3d 953 (8th Cir. 1995). The determination as to whether facts are "material" must be made by reference to the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Id.* at 252. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248.

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996). The nonmoving party must then demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Anderson*, 477 U.S. at 256, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); *Krenik*, 47 F.3d at 957. However, the non-movant must present more than a mere "scintilla" of evidence to satisfy its burden of demonstrating the dispute is "genuine." *Anderson*, 477 U.S. at 252.

### B. *ACIC is Entitled to Summary Judgment on Plaintiff's Claims as there was no Breach of Contract*

Federal courts apply the substantive law of the state. It is undisputed that an insurer owes a contractual duty to pay claims owed under a policy. *See Aon Risk Servs. v. Meadors*, 100 Ark. App. 272, 285, 267 S.W.3d 603, 612 (2007). However, an insurer is not required to cover an insurance claim for which a valid exclusion in the insurance contract applies. Exclusions are regarded as part of the insurance contract. *George v. Great Lakes Reinsurance*, 2015 Ark. App. 36, 454 S.W.3d 243, 246.

If "the terms of the exclusion are clear and unambiguous, the policy language controls, and absent statutory strictures to the contrary, the exclusionary term should be generally enforced according to its terms." *Harasyn v. St. Paul Guardian Ins. Co.*, 349 Ark. 9, 18, 75 S.W.3d 696, 701 (2002). When an insurer denies coverage on the basis of an applicable exclusion, the ***insured bears the burden*** of showing that their insurance claim would have been covered. *S. Farm Bureau Cas. Ins. Co. v. Fields*, 262 Ark. 144, 146, 553 S.W.2d 278, 279 (1977). For the reasons stated below, Plaintiff is unable to meet its burden that the claim is covered under the Policy.

### i. *There Was no Active Business Interruption Coverage to Cover the Lost Sales, Wages, or Other Costs Incurred due to the Restaurant's Closure*

According to the Estimate submitted by Plaintiff, the Restaurant claims $56,328.19 for lost sales and $74,374.27 in payroll. (Ex. 3). The business interruption endorsement would have covered these costs, as the business interruption coverage provides coverage for:

> (a) Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred; and
>
> (b) Continued normal operating expenses incurred, including payroll.

4

However, this coverage was not in effect on the date of loss. (Ex. 1). Both Mr. and Mrs. Slane admitted during their depositions that David Teigen, the agent who had procured the Policy for Grotto, had failed to obtain business interruption coverage for the period during which the loss occurred. (Ex. 20, 28:13-25, 32:17-24; Ex. 21, 24:15, 25:16). Furthermore, the email exchange between David Teigen and Mrs. Slane shows Plaintiff requested business interruption coverage *after* the loss had occurred. (Ex. 18). Thus, the evidence clearly shows that there was no business interruption coverage in effect at the time of loss, and that ACIC owes no contractual duty to issue payments as to the lost income and payroll expenses.

### *ii. Plaintiff's Spoilage Claim was not Covered*

In the Total Estimate submitted by Plaintiff, there is a line item claiming $3,399.20 for food spoilage. No payment would be owed as the amount does not exceed the $5,000.00 separate spoilage deductible. (Ex. 1, p. 9). Even if the spoilage damages exceeded the deductible, there would still be no coverage. Under the language of the spoilage endorsement, there is coverage for a "breakdown or contamination" caused by either a change in temperature, equipment failure, and contamination by refrigerant, or as the result of a "power outage." (Ex. 1, pp. 100-101). Mr. Slane's deposition testimony shows that none of these situations are applicable. When the Restaurant was closed, Plaintiff received several food deliveries. (Ex. 20, 65:2-20). Mr. Slane testified that none of these food deliveries, which occurred while the restaurant had been closed, were moved to a refrigerator. (Ex. 20, 68:3-22). As a result, the food spoiled naturally due to lack of refrigeration or use, rather than as a result of a broken refrigeration unit, contamination, or a power outage. Therefore, there was no coverage because Plaintiff's claimed spoilage damages do not exceed the $5,000.00 deductible, and because it is not "spoilage" as defined by the Policy.

### *iii. The Damages to Stone Masonry and Rockwall Pre-existed the Loss*

Plaintiff seeks $23,500.00 in costs to remedy damages to the restaurant's stone walls. Plaintiff relies on an Estimate provided by Stacy Mahurin of Stacy's Historic Stoneworks. (Ex. 12). To evaluate the stone masonry damages, IA Hart first inspected the restaurant on January 30, 2024, but did not identify any water damage. (Ex. 5, p. 43). On April 23, 2024, IA Hart conducted a second inspection at the restaurant but similarly did not find any water damage to the stone walls. (Ex. 4, p. 26; Ex. 9). Despite IA Hart being unable to identify water damage to the stone walls during his first two inspections, ACIC retained Engineer Quentin Ragan who conducted an engineering inspection on June 7, 2024 with Mrs. Slane present. (Ex. 10). Engineer Ragan also did not identify any water damage to the stone walls and stated in his report that he did not observe any deleterious effects. (Ex. 10, p. 5).

The only support Plaintiff offers for the stone masonry damages is the $23,500.00 estimate provided by Stacy's Historic Stoneworks. The estimate only contains three line items as follows:

- Estimate for removal of existing auto mortar in stone in joints in seating areas of restaurant—$8,000.00;
- Estimate for retuckpointing racked joints—$12,000.00;
- Time and materials for protection of remainder of structure and cleanup after both stages—$3,500.00;

(Ex. 12). Even if there are damages to the masonry as alleged by Plaintiffs, there is no evidence demonstrating these were caused by the alleged leaking. Mr. Mahurin himself even admitted that the stone wall damage could have been caused by age-related deterioration and that it had been previously repaired. (Ex. 23, 58:19-59:12). As such, ACIC reasonably found that the stone wall damage was not caused by the alleged leak.

### *iv. The Damages to the Tiling Pre-existed the Loss*

Plaintiffs allege that the majority of their property damages is due to tiling damage. In their Estimate, they allege damages of $60,738.19 for tiling repairs. (Ex. 3). This $60,738.19 estimate is based on the Estimate provided by Anthony Corbin of Gemin Solutions. (Ex. 7). Similar to the estimate for the stone masonry by Stacy Mahurin, there is nothing within the Gemini Solutions Estimate indicating that the tiling damages were caused by water damage from the subject claim.

During his deposition, Mr. Cobin admitted that he was not at the restaurant when the alleged leaking occurred. (Ex. 22, 15:15-17). He originally inspected the Restaurant on March 18, 2024, two months after the alleged incident, and then generated an Estimate the following day. (Ex. 22, 12:25-13:3). During his inspection, Mr. Corbin did not use a moisture meter. (Ex. 22, 17:17). Mr. Corbin also indicated that he does not possess any documentation supporting the Gemini Estimate, and that he no longer has the notes he had taken. (Ex. 22, 19:24-20:13). The only basis Mr. Corbin had for determining that the tiling was damaged was the fact that most of the tiling was "floating" and no longer stuck to the concrete. (Ex. 22, 21:10-22:8). Even then, Mr. Corbin could not confirm or deny whether the tiles had been floating prior to the subject loss. (Ex. 22, 21:10-15).

After Mr. Corbin inspected the restaurant and provided the Gemini Estimate, IA Hart conducted the second ACIC inspection on April 23, 2024, with Mr. Corbin present. (Ex. 9). During this inspection, IA Hart asked Mr. Corbin to identify the loose tiles, but Mr. Corbin was unable to do so. (Ex. 9, pp. 1-2). Despite this, ACIC also obtained an opinion from Engineer Quentin Ragan. Similar to IA Hart, Engineer Ragan did not find any cracks or looseness to the tiling and believed that any damages pre-existed the date of loss. (Ex. 4, p. 19; Ex. 11, p. 5).

Based on both the findings of IA Hart and Engineer Ragan, ACIC reasonably found that there was no coverage for the tiling damages.

### v. *The Estimates for the Furniture and Water Remediation were Proper*

Finally, Plaintiff claims $12,430.33 in costs for damaged furniture and $16,794.19 for water remediation costs. ACIC agrees that there is coverage afforded for damaged furniture and water remediation, but contests the amounts claimed by Plaintiff. The $12,430.33 amount Plaintiff claims for the lost furniture is based on screenshots and listings of the damaged furniture from RCSuppliesOnline.com. (Ex. 8). Based on the photos and video submitted by Plaintiff, which shows water had only affected table tops and the upper portions of chairs, IA Hart determined that there were damages to fourteen (14) chairs, four (4) high top bar chairs, three (3) small tabletops, two (2) medium tabletops, one (1) large table top, and seven (7) table bases. In the Estimate, IA Hart determined the RCV of these items to be $4,097.83. (Ex. 16). After applying depreciation, IA Hart determined the ACV of the damaged furniture to be $2,253.81.00. (Ex. 16). The RCSuppliesOnline.Com listings, conversely, do not account for depreciation costs, and include costs for furniture that IA Hart did not identify damage to. Furthermore, during the claim handling, Mrs. Slane *agreed* with IA Hart's determination that only six set of table tops and chairs were effected. (Ex. 16).

As to the water remediation costs, IA Hart estimated $5,051.60 as to the total costs between water extraction and cleaning costs based on the number of employees and the number of hours each spent. It is undisputed that IA Hart relied on the number of hours and employees that were submitted by Mrs. Slane to come During the pendency of the claim handling, Mrs. Slane had sent to IA Hart stating that three (3) Grotto employees had each worked forty (40) hours total a rate of $16.00 per hour, which would total $1,920.00. (Ex. 24). Furthermore, ACIC

8

issued payment *above* the amount of costs Plaintiff incurred as to water remediation costs. As such, Plaintiff offers no evidence as to the basis of $16,794.19 in cleanup crew costs in the Estimate.

## IV.   CONCLUSION

The evidence shows that ACIC properly found that there were only covered damages as to certain pieces of Plaintiff's furniture, and the water remediation costs. The Policy endorsements clearly show that Plaintiff did not have business interruption coverage on the date of the loss, and Plaintiff's spoilage claim is not a covered loss since it does not exceed the $5,000.00 deductible. The findings of IA John Hart and Quentin Ragan show that there was no water damage to the stone masonry or tiling, and that any potential damage pre-existed the date of loss.

WHEREFORE, premises considered, Defendant Atlantic Casualty Insurance Company requests that the Court enter judgment in its favor on Plaintiff's claims and award any other relief this Court deems just and equitable.

Respectfully submitted,

By */s/ Jeremy K. Ward*
   Jeremy K. Ward, Ark. Bar No. 2012014
   FRANDEN, FARRIS, QUILLIN,
      GOODNIGHT, ROBERTS + WARD
   Two West Second St., Suite 900
   Tulsa, OK  74103
   918/583-7129
   FAX 918/584-3814
   jward@tulsalawyer.com
   ***Attorney for Defendant***
   ***Atlantic Casualty Insurance Company***

## **CERTIFICATE OF SERVICE**

I certify that on the 27th day of February, 2026, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to:

Amber Peckio Garrett
2727 East 21st Street, Suite 100
Tulsa, OK 74114
amber@amberlawgroup.com
***Attorney for Plaintiff***

                                            */s/ Jeremy K. Ward*