**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**

| | |
|---|---|
| GROTTO, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 3:25-cv-03003-TLB |
| v. ) | |
| ) | |
| ATLANTIC CASUALTY INSURANCE ) | |
| COMPANY, ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT ATLANTIC CASUALTY INSURANCE COMPANY'S STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Defendant Atlantic Casualty Insurance Company ("ACIC") files its Statement of Undisputed Facts in Support of its Motion for Summary Judgment as to all of Plaintiff's claims.

*A. Policy*

1. At all times relevant hereto, Plaintiff was insured under ACIC Commercial Lines Policy No. M320001005 (hereinafter "the Policy"). (Exhibit 1 – Certified Policy).

2. The Policy covered the Grotto Wood-Fired Grill and Wine Cave restaurant located at 10 Center Street, Eureka Springs, AR 72632.

3. The Policy provides $500,000.00 in Building Personal Property Coverage and $20,000.00 Spoilage Coverage, both subject to a $5,000.00 deductible. (Ex. 1, p. 9).

4. The Policy in effect on the date of loss *did not* contain business interruption coverage for lost business income, sales, payroll or other costs incurred while the Restaurant was closed.

5. The Policy states, in relevant part, as follows:

## BUILDING AND PERSONAL PROPERTY COVERAGE

**A. Coverage**

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

**1. Covered Property**

**a. Building**, meaning the building described in the Declarations…

**b. Your Business Personal Property** [including]:
(1) Furniture and fixtures;

(2) Machinery and Equipment;

(3) "Stock"

(4) All other personal property owned by you and used in your business;

(5) Labor, materials or services furnished or arranged by you on personal property of others;

(6) Your use interest as tenant in improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:

   (a) Made a part of the building or structure you occupy but do not own; and

   (b) You acquired or made at your expense but cannot legally removed;

(7) Leased personal property for which you have a contractual responsibility to insure…

(Ex. 1, p. 80).

\*\*\*

## SPOILAGE COVERAGE

**Covered Cause of Loss**

a. Breakdown or Contaminations, meaning:

(1) Change in temperature or humidity resulting from mechanical breakdown or humidity resulting from mechanical breakdown or mechanical failure of refrigerating, cooling or humidity control apparatus or equipment, only while such equipment or apparatus is at the described premises; and

(2) Contamination by the refrigerant.

b. Power Outage meaning change in temperature or humidity resulting from complete or partial interruption of electrical power, either on or off the described premises, due to condition beyond your control.

(Ex. 1, pp. 100-101).

### B. *Claim Handling*

6. On January 26, 2024, ACIC was notified of a water damage incident to Plaintiff's restaurant that occurred on January 17, 2024. (Ex. 2).

7. According to Plaintiff, the Restaurant was closed between January 13, 2024, through January 18, 2024, as a result of the frozen pipes and flooding. (Ex. 3).

8. According to the First Notice of Loss, temperatures had dropped to below freezing the night of January 13, 2024. When Plaintiff's owner, Rodney Slane ("Mr. Slane"), arrived at the restaurant the following morning, the restaurant's pipes were frozen. The pipes remained frozen until January 17, 2024. (Ex. 2).

9. When the Restaurant's pipes thawed on January 17, 2024, a water supply line ruptured and leaked. (Ex. 2).

10. On January 26, 2024, ACIC sent a Claim Acknowledgment Letter to Plaintiff, the same day the claim was reported. (Ex. 4, p. 39).

11. On January 29, 2024, Independent Adjuster John Hart ("IA Hart") contacted Mr. Slane to discuss the claim. During this call, IA Hart advised Mr. Slane that the Policy did not include business interruption coverage for loss of income and that Spoilage Coverage was inapplicable. (Ex. 4, p. 35).

12. On January 30, 2024, IA Hart conducted an on-site photo inspection at Plaintiff's Restaurant. Mr. Slane was also present for the inspection. (Ex. 5, p. 1).

13. During the inspection on January 30, 2024, IA Hart did not observe any loose or missing tiles. (Ex. 5, p. 4).

14. During the inspection, IA Hart also requested a copy of Plaintiff's lease, utility invoices, as well as contractor bids opining as to the masonry and structural damages. (Ex. 5, pp. 2-3).

15. On February 5, 2024, IA Hart completed a Report summarizing his findings from the inspection. (Ex. 5).

16. In IA Hart's First Report, he noted the following:

- o Water damages to painted wood structures attached to the main dining room ceiling that covered pipes and HVAC ducts, and to the clear finish on the dining room tables;

- o Grout at the stone exterior walls facing inside the dining room, which was "flaked" at certain areas;

(Ex. 5, pp. 2-3).

17.     On February 27, 2024, ACIC issued the First Reservation of Rights Letter (the "First ROR") to Plaintiff, advising that ACIC is investigating whether Spoilage Coverage is owed for the perishable food items.[1] (Ex. 6).

18.     On April 19, 2024, IA Hart received a repair estimate from Plaintiff prepared by Gemini Solutions, LLC. (Ex. 4, p. 30). The Gemini Estimate contemplated repair costs of $60,738.19, including demolition and replacement of tiling and repairs to the sheet rock and ceiling. (Ex. 7).

19.     Along with the Gemini Solutions Estimate, IA Hart also received screenshots from RCSuppliesOnline.com from Plaintiff, which contained a subtotal for all the table and chairs believed to be damaged. (Ex. 8).

20.     On April 23, 2024, IA Hart conducted an additional inspection (hereinafter the "Second Inspection") to verify the accuracy of the RCSuppliesOnline and Gemini Solutions Estimates. Anthony Corbin ("Mr. Corbin") of Gemini Solutions, was also present at this Second Inspection. (Ex. 9).

21.     During this Second Inspection, IA Hart discussed the Gemini Estimate and reinspected the tiling with Mr. Corbin. IA Hart asked Mr. Corbin to show the locations as to where he believed the tiles that appeared to be water-damaged or loose, but Mr. Corbin was unable to do so. (Ex. 9, pp. 1-2).

22.     IA Hart also reinspected the grout issue during the reinspection and noted seven applications, each with varying qualities of mortar used. (Ex. 4, p. 26).

---

[1] The Letter also stated that ACIC was investigating whether Plaintiff maintained heat and drained water lines for coverage to be owed. This fact is undisputed by the parties, as Plaintiff later provided utility bills showing that heat was maintained.

23.     Due to IA Hart being unable to identify damages to the tiling or masonry, following the re-inspection, Engineer Quentin Ragan ("Engineer Ragan") of EFI Global was retained to conduct an engineering inspection. (Ex. 9, p. 1).

24.     Engineer Ragan conducted the engineering inspection on June 7, 2024, with Autumn Slane ("Mrs. Slane") present. (Ex. 9, p. 1).

25.     Following the engineering inspection, Engineer Ragan created a Report. The Engineer Report contains the following findings:

- No deleterious effects from the water, including cracks or looseness, were observed to the tiling in the first-floor dining area, the first-floor hallway leading to the bathrooms, nor in the second-floor kitchen. The cracks and loose tile conditions were consistent with age-related deterioration;

- No deleterious effects were observed to the stone masonry in the eastern and southern exteriors walls of the first-floor dining room, the first-floor hallway leading to the bathrooms, nor in the second-floor kitchen. The friable condition of the stone masonry was a result of age-related deterioration.

(Ex. 10, p. 5).

26.     On August 7, 2024, IA Hart received the Engineering Report from Engineer Ragan and found it reiterated his findings that the damage pre-existed the date of loss. (Ex. 4, p. 19).

27.     On August 12, 2024, IA Hart completed the Fourth Report. (Ex. 11). Attached to the Report was a total estimate submitted by Plaintiff (hereinafter "Plaintiff's Estimate"), which claims total damages of $244,165.36. (Ex. 3). Plaintiff's Estimate breaks down as follows:

- $12,430.33 for furniture, based on screenshots provided from RCSuppliesOnline.com. (Ex. 8);

- $23,500.00 for stone masonry repairs, based on an estimate provided by Stacy's Historic Stoneworks. (Ex. 12);

- o  $60,738.19 for tile repairs, based on an estimate provided by Gemini Solutions, LLC. (Ex. 7);

- o  $56,328.38 for lost sales;

- o  $74,374.27 for payroll;

- o  $3,399.20 for food spoilage; and

- o  $16,794.19 for clean-up crew.

28. On August 21, 2024, ACIC issued the Second Reservation of Rights Letter to Plaintiff. The Letter explained that ACIC will not pay for "loss or damage caused or resulting from wear/tear, decay, deterioration, rust, settling, cracking…" and cited language from the Engineer Report in support. (Ex. 13).

29. On August 23, 2024, ACIC issued the Third Reservation of Rights Letter stating Plaintiff's Policy does not have business interruption coverage. (Ex. 14).

30. On September 30, 2024, ACIC issued a Letter requesting Plaintiff provide invoices and receipts of the damaged building components. (Ex. 15).

31. On October 16, 2024, IA Hart completed an estimate after Plaintiff failed to provide supporting documentation. The Estimate calculated a Replacement and Actual Cost Value of $7,305.41, and after applying the $5,000.00 deductible, determined the net claim to be $2,305.41. (Ex. 16).

32. Based on the October 16, 2024 Estimate, IA Hart determined the total water extraction costs to be $5,051.60 based on the estimate of hours provided by Mrs. Slane, and determined the costs to repair and replace damaged furniture were $4,097.83. (Ex. 16).

33. On October 18, 2024, ACIC issued a letter to Plaintiff explaining the basis for its estimate for the $2,305.41 net payment and explained that a check had been issued. The Letter

7

again requested that Plaintiff submit invoices and receipts as to the damaged building components and invited Plaintiff to submit additional information for ACIC to continue to review the claim. (Ex. 17).

### C. Filing of this Action and Discovery

34. Plaintiff filed this action on January 13, 2025, alleging ACIC breached the insurance contract. (Doc. No. 2).[2]

35. On May 15, 2025, Plaintiff produced the documents required to be identified under Fed. R. Civ. P. 26(a)(1).

36. As part of its Initial Disclosures Production, Plaintiff produced an email thread dated January 31, 2024, showing that they requested business interruption coverage after the date of loss on January 17, 2024. (Ex. 18).

37. Plaintiff also produced the Policy for the period immediately *after* the date of loss, which does include business interruption coverage. (Ex. 19, Bates Nos. 000224-000225).

### i. Deposition of Rodney Slane

38. Mr. Slane was deposed on September 29, 2025. (Ex. 20).

39. Mr. Slane admitted that his insurance agent, David Teigen, failed to obtain business interruption coverage for the Policy in place at the time of the loss, and that the January 31, 2024 email shows they requested coverage for their future policy. (Ex. 20, 28:13-25, 32:17-24).

---

[2] Plaintiff's owners, Rodney and Autumn Slane, were originally named as Plaintiffs as well, but filed dismissal without prejudices on May 8, 2025, as they are not named insureds under the Policy. (Doc. Nos. 16 and 17). Plaintiff's insurance agent, Teigen Insurance, had also been named as a Defendant, but Plaintiff's negligence claims against Teigen and bad faith claims against ACIC have also been dismissed. (Doc. Nos. 14 and 23).

40. Mr. Slane testified that the claimed spoilage occurred as a result of the delivered food being left on the floor while the restaurant was closed and not being able to be used, rather than as a result of equipment failure. (Ex. 20, 65:2-20, 68:3-22).

41. Mr. Slane admitted that Anthony Corbin did not look at the tiling when removed to determine the cause of damage. (Ex. 20, 93:5-10).

42. Mr. Slane testified that he was not the one who had the rock wall installed in the restaurant, and he has never modified or had it tuck-pointed. (Ex. 20, 103:22-104:3).

43. Mr. Slane understands that ACIC had the right to ask for documents and payments regarding the improvements and betterments made to the restaurant space, but explained he not have these documents nor attempted to get banking records showing these payments. (Ex. 20, 111:3-23).

44. Mr. Slane understands that the spoilage damages claim is less than the Policy's $5,000.00 deductible. (Ex. 20, 143:4-8).

### ii. *Deposition of Autumn Slane*

45. Mrs. Slane, a manager of the Restaurant and the wife of Rodney Slane, was deposed on September 29, 2025. (Ex. 21).

46. Mrs. Slane also admitted that their insurance agent, David Teigen, admitted to not obtaining business interruption coverage for the Policy in effect at the time of the loss. (Ex. 21, 24:15-25:16).

47. Mrs. Slane stated that the videos taken by her and her husband of the flooding do not show water coming down the rock walls. (Ex. 21, 48:2-3).

48.     Mrs. Slane explained that she had provided an estimate of the number of hours and employees spent for remediation, which IA Hart had used as the basis for remediation costs in the Estimate. (Ex. 21, 75:7-13).

49.     In calculating the estimated costs for remediation and the clean-up crew in Plaintiff's Total Estimate, Mrs. Slane had not been quoted but had based them on her experience with cleaning crews. (Ex. 21, 64:3-6, 77:9-10). She also confirmed these estimated costs were not actually paid. (Ex. 21, 79:3).

50.     Mrs. Slane testified that she and her husband were unable to obtain or submit any receipts, invoices, or other documents showing the improvements and betterments made to the building, as requested by ACIC. (Ex. 21, 66:22-67:15).

### iii.  Deposition of Anthony Corbin

51.     Anthony Corbin ("Mr. Corbin"), one of the owners of Gemini Solutions, LLC, was deposed on August 22, 2025. (Ex. 22).

52.     Mr. Corbin testified that the Gemini Estimate was generated a day after he had inspected the restaurant on March 18, 2024. (Ex. 22, 12:25-13:3).

53.     Mr. Corbin testified that he was not at the restaurant when the leak occurred and did not witness the leaking. (Ex. 22, 15:15-17).

54.     When Mr. Corbin inspected the restaurant on March 18, 2024, he did not use a moisture meter. (Ex. 22, 17:17).

55.     Mr. Corbin is unsure whether he has any supporting documents to support the Gemini Estimate, beyond notes he took that he no longer has. (Ex. 22, 19:24-20:13).

56. Mr. Corbin testified that he had determined some of the tiles were loss and "floating" based on the sound they made while being walked over. However, he could not deny that the floating had occurred before the date of loss. (Ex. 22, 21:10-22:15).

57. Mr. Corbin acknowledged that the tiling may have been old, that he did not know how old it was, what the condition it was in before the water leak, or whether it had already been floating. (Ex. 22, 25:4-26:3).

### iv. Deposition of Stacy Mahurin

58. Stacy Mahurin ("Mr. Mahurin"), the owner of Stacy's Historic Stoneworks, was deposed on August 22, 2025. (Ex. 23).

59. Mr. Mahurin testified that he does not hold any licenses or certifications relating to stonework or in dealing with rocks, mortar, tiling, or any other related area, and does not possess any engineering degree. (Ex. 23, 7:16-19, 57:8-12).

60. Mr. Mahurin admitted that the damage to the stone wall could have been caused by age-related deterioration and that the wall may have been previously repaired. (Ex. 23, 58:19-59:12).

Respectfully submitted,

By */s/ Jeremy K. Ward*
Jeremy K. Ward, Ark. Bar No. 2012014
FRANDEN, FARRIS, QUILLIN,
   GOODNIGHT, ROBERTS + WARD
Two West Second St., Suite 900
Tulsa, OK  74103
918/583-7129
FAX 918/584-3814
jward@tulsalawyer.com
*Attorney for Defendant*
*Atlantic Casualty Insurance Company*

## **CERTIFICATE OF SERVICE**

I certify that on the 27th day of February, 2026, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to:

Amber Peckio Garrett
2727 East 21st Street, Suite 100
Tulsa, OK 74114
amber@amberlawgroup.com
***Attorney for Plaintiff***

*/s/ Jeremy K. Ward*